**UNITED STATES of America**

v.

**William H. JEFFERSON, Appellant.**

**No. 24267.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 19, 1971.

Decided June 7, 1971.

25, 1969, committed by two young men and a young woman. Appellant was identified as the gunman. He was indicted, convicted, and sentenced on three counts of robbery and four counts of assault with a dangerous weapon, his sentences of three to fifteen years on each robbery count and three to ten years on each assault count to run concurrently. The defense was an alibi, supported by appellant's own testimony and by that of six other witnesses. We find that the issue of guilt was properly submitted to the jury and affirm his convictions.

## I

Appellant claims that there was error in one respect in permitting identification testimony at the trial. One of the ladies at the scene of the robbery, Miss Thompson, recognized appellant as a former classmate at her Washington, D.C., high school. Upon the robbers' departure she telephoned her mother to bring her school yearbook to the salon. From the yearbook she picked out appellant's photograph on page 90 as that of the gunman. Another lady who had been robbed, Mrs. Vines, also identified appellant's picture in the book, free of any suggestion. Shortly afterwards Mrs. Vines apparently made another identification of appellant from photographs exhibited to her by the police.[1] Subsequently, both ladies identified appellant at a lineup held on September 4, 1969, as the robber with the gun; and at trial both identified him in court.

■ Appellant's only contention relating to identification testimony is that Mrs. Vines' in-court identification of him violated his Sixth Amendment right to counsel, because the second photographic identification by Mrs. Vines, which followed that made by her from the yearbook, was made in the absence of counsel, and there was no finding by the trial judge of an independent source for her

Mr. Morton Liftin, Washington, D. C. (appointed by this court) for appellant.

Mr. Charles H. Roistacher, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and James E. Sharp, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and TAMM and LEVENTHAL, Circuit Judges.

FAHY, Senior Circuit Judge:

There was a robbery at a beauty salon at gunpoint, at about 7:45 p. m. on July

---

1. From our reading of the record it is not at all clear that this second photographic identification by Mrs. Vines ever occurred. Appellant's claim of error, however, is premised on its existence, and the Government in its brief recognizes its occurrence. Accordingly we shall assume that it did occur.

in-court identification. At the time of the photographic identification now challenged appellant had not been arrested. Moreover, he had been positively identified by Mrs. Vines from his picture in the high school yearbook, the accuracy and legality of which are not challenged. He was again identified by Mrs. Vines in a lineup which is not challenged. In addition, Miss Thompson had recognized him as her classmate, which she verified shortly after the robbery by her yearbook identification; and Miss Thompson also identified appellant at the lineup. Whatever effect the absence of counsel may have in other circumstances we think that in the unique situation we have described the identification evidence was not blemished in any manner which calls for reversal of the convictions. *See* United States v. Kirby, 138 U.S.App.D.C. 340, 427 F.2d 610 (1970); United States v. Horton, 142 U.S.App. D.C. 225, 440 F.2d 253 (1971).

## II

Appellant also urges error in denial by the trial court of his motion for a mistrial. The motion was based on the failure of the Government to have supplied defense counsel, under Rule 16(a)(1), Fed.R.Crim.P., with what is claimed was a written or recorded statement given by appellant to Officer Totten, who was investigating the robbery. For the reasons now explained we do not find reversible error in this matter.

Appellant and six other witnesses testified for the defense that at about 7:00 p. m. the evening of the robbery, appellant was at Howard University, that from there he was driven by a friend to R.F.K. Stadium for an all-star football game, being seen entering the stadium by another friend about 8:00 p. m., and that he remained there until 9:30 p. m., or 10:00 p. m. Called in rebuttal Officer Totten testified that at about 10:00 p. m.

the night of the crime he and another officer questioned appellant at his home, at which time appellant told them he had worked at Howard University until 9:00 p. m. that night, then went home by bus with Walter White, that John Daniels could verify his whereabouts until 9:00 p. m., and that Joe McMillan could verify his general employment at the University. The officer testified that he did not take or have any notes of his interview with appellant; he said he was able to remember the names and events appellant related to him because he "was constantly going over this case in particular." [2] He was then asked if he had a memorandum of the names of persons appellant said could verify his story. He answered yes. The court directed him to hand over any notes to counsel.

At a bench conference which ensued a document containing what appellant claims was the recorded statement of appellant to the officer was submitted to the court. It was a copy of a typewritten police report about the robbery made the night it occurred. At the bottom of the report, in handwriting, were the names of White, McMillan, and Daniels, with telephone numbers and dates indicating when the officer interviewed them. Defense counsel's position was that these notes on the document consisted of a written record of the officer's conversation with defendant which had not been furnished to him in response to his pretrial request for all recorded statements of the defendant. The court commented that the paper only bore names and addresses, but counsel insisted that even so it contained information furnished by the defendant to the officer which should have been furnished to him. He moved for a mistrial.

The jury was excused to enable the court to explore more fully the facts about the handwritten portions of the report. Officer Totten testified that the handwritten notes were added to the

---

**2.** Officer Totten testified at some length about the number and nature of his investigations. He testified that he makes notes in some cases and relies on his memory in others, but that if it is an important case like a robbery he ordinarily takes notes.

typewritten report three days after the interview with appellant, when, he said, he checked out appellant's alibi and made the notations. He acknowledged, however, that he obtained the names from appellant at the time of the interview as people he said could vouch for him. The court denied the motion for a mistrial, on the ground "[t]here is no indication that this document represents notes of an interview."

■ The Government urges that the ruling of the judge was that no statement within the contemplation of Rule 16(a)(1) was made or recorded by the officer, that the ruling is not clearly erroneous, and that, accordingly, it should be accepted, citing Campbell v. United States, 373 U.S. 487, 493, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963), which involved an underlying factual issue under the Jencks Act. There is, however, no similar factual dispute involved in the present problem, and we are inclined to the view that the handwritten notes should have been furnished to the defense under Rule 16(a)(1). They were records of parts of appellant's statement to the officer.

■ Assuming that the notes should have been furnished to counsel in response to his request, we nevertheless do not think denial of the motion for a mistrial undermines the convictions. According to the officer the names of White, McMillan, and Daniels were given to him in support of an alibi that appellant was at Howard University until 9:00 p. m.[3] Had the names been in the hands of defense counsel prior to trial, followed by counsel's interviewing the persons named, it is possible the stadium alibi might have been discarded. Appellant, however, either did not advise his counsel of the alibi given to the officer the night of the interview, assuming the officer's testimony to be true, or if he did advise counsel the latter decided not to use this defense. The alibi relied upon at trial was rejected by the jury. Whether or not the officer's testimony was true, we are asked in effect to assume that had the notes been made available to defense counsel a more successful defense might have been advanced. While this court must be restrained in speculating as to possible uses counsel might make of information to which he is entitled, the uniquely strong identification of appellant as the robber with the gun leads us to conclude that the assumption suggested is itself too speculative for us to hold that there was an abuse of discretion by the trial court in denying the motion that he declare a mistrial.[4]

We have considered all points raised, though our discussion has been selective.

Affirmed.

---

3. According to the officer, however, McMillan's name had been given merely as one of appellant's supervisors who would verify his employment at Howard University.

4. We do not wish to imply that in other situations non-disclosure of statements under Rule 16 would not be prejudicial and a basis for reversal.