**UNITED STATES of America, Plaintiff,**

v.

**William L. HART, Defendant.**

**No. 91–80136.**

United States District Court,
E.D. Michigan, S.D.

April 9, 1991.

Alan M. Gershel, Craig A. Weier, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Norman L. Lippett, Hyman & Lippett, Birmingham, Mich., Thomas W. Cranmer, Miro, Miro & Weiner, Bloomfield Hills, Mich., for defendant.

ORDER GRANTING IN PART AND DE-
NYING IN PART WILLIAM L.
HART'S MOTION FOR DISCLOSURE
OF BRADY MATERIAL AND EVI-
DENCE FAVORABLE TO THE DE-
FENDANT

GADOLA, District Judge.

William L. Hart seeks pretrial disclosure
of *Brady* material, Jencks Act material and
Fed.R.Crim.P. 16 material.

The government does not oppose the mo-
tion with respect to the Fed.R.Crim.P. 16
material.

With respect to the *Brady* and Jencks
Act material, the dispute is primarily over
when, not whether, the requested informa-
tion will be disclosed. The court will deal
separately with four categories of informa-
tion. First, the court will analyze *Brady*
material that is directly exculpatory [1] and
not covered by the Jencks Act. Second,
the court will analyze *Brady* material that
is nonexculpatory impeachment evidence [2]
and not covered by the Jencks Act. Third,
the court will analyze nonexculpatory im-
peachment material that is covered by both
*Brady* and the Jencks Act. Fourth, the
court will analyze directly exculpatory in-
formation that is covered by both *Brady*
and the Jencks Act.

*A.  Directly Exculpatory Material Cov-
ered by Brady and Not Covered by
the Jencks Act*

■ The government argues that "it is
within the sole discretion of the govern-
ment, within due process limits, when and
whether to turn over [*Brady*] material to
the defendants." Government's brief at p.
3. Granted, the government must disclose
material within due process limits. How-
ever, it is the court's responsibility to fix
those due process limits, rather than have
the same determined by the government's
"sole discretion." As the court pointed out

in *United States v. Starusko*, 729 F.2d 256,
261 (3rd Cir.1984), "the district court has
general authority to order pretrial disclo-
sure of *Brady* material 'to ensure the ef-
fective administration of the criminal jus-
tice system.'" (Citation omitted).

Ordinarily, *Brady* material must be dis-
closed "in time for its effective use at
trial." *United States v. Higgs*, 713 F.2d
39, 44 (3rd Cir.1983); *accord, United
States v. Presser*, 844 F.2d 1275, 1283 (6th
Cir.1988). However, in *United States v.
Starusko*, 729 F.2d 256, 261 (3rd Cir.1984),
the court noted that an order requiring
pretrial disclosure of *Brady* material "per-
petuated our longstanding policy of encour-
aging early production." Whether pretrial
disclosure would be required under the "ef-
fective use" standard depends on the cir-
cumstances of each individual case. How-
ever, some courts have held that due pro-
cess *obligates* the prosecutor to disclose
exculpatory information as soon as the
character of such information is recog-
nized, which may require pretrial disclo-
sure. *See e.g., United States v. Hilde-
brand*, 506 F.2d 406 (5th Cir.1975), *cert.
denied* 421 U.S. 968, 95 S.Ct. 1961, 44
L.Ed.2d 457; *United States v. Pollack*,
534 F.2d 964 (D.C.Cir.1976), *cert. denied*
429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292.

■ Conversely, other courts have held
that due process is not violated when *Bra-
dy* material is not disclosed until the time
of trial or until immediately before intro-
duction of the corresponding inculpatory
evidence. *See e.g., Patler v. Slayton*, 503
F.2d 472 (4th Cir.1974); *United States v.
Cole*, 449 F.2d 194 (8th Cir.), *cert. denied*
405 U.S. 931, 92 S.Ct. 987, 30 L.Ed.2d 806
(1972). The Sixth Circuit has specifically
held as follows:

In general, the principles announced in
*Brady* do not apply to a tardy disclosure
of exculpatory information, but to a com-

---

1. For purposes of this opinion directly exculpa-
tory evidence refers to evidence that would sup-
port a direct inference that the defendant is
innocent. In contrast, impeachment informa-
tion may rise to the level of *Brady* material;
however, unless it is also directly exculpatory,
impeachment information merely supports an

inference that there may be insufficient evi-
dence to find guilt beyond a reasonable doubt.

2. For purposes of this opinion nonexculpatory
impeachment evidence refers to information
that is covered by *Brady*, has impeachment val-
ue, and is not directly exculpatory.

plete failure to disclose. (Citation omitted). If previously undisclosed evidence is disclosed, as here, during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure.

*United States v. Word*, 806 F.2d 658, 664 (6th Cir.1986). Although, under *Word*, pretrial disclosure of *Brady* material is not required, it is clear that a "district court has general authority to order pretrial disclosure of *Brady* material 'to ensure the effective administration of the criminal justice system.' " *United States v. Starusko*, 729 F.2d 256, 261 (3rd Cir.1984) (citation omitted). Accordingly, the court will order the government to provide the requested directly exculpatory *Brady* material that is not covered by the Jencks Act prior to trial and as expeditiously as possible.

### B. Nonexculpatory Impeachment Material Covered by Brady and Not Covered by the Jencks Act

■ As the court noted in *United States v. Five Persons*, 472 F.Supp. 64, 67 (D.N.J. 1979), "it is difficult to imagine information more material to the preparation of the defense than credibility items for *critical* or *major* government witnesses." (emphasis supplied). In *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972) the Court held that "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within [the *Brady* rule]. (citation omitted)." In *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985) the Court held for purposes of the *Brady* rule there is no difference between exculpatory evidence and impeachment evidence. In *United States v. Buchanan*, 891 F.2d 1436, 1443–44 (10th Cir.1989) the court expounded, as follows, on the scope of *Brady* with respect to impeachment evidence:

> *Brady* does not "automatically require a new trial 'whenever a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict[.]' " *Giglio*, 405 U.S. at 154,

92 S.Ct. at 766 (quoting *United States v. Keogh*, 391 F.2d 138, 148 (2d Cir.1968)). Only where a witness' credibility is material to the question of guilt does the prosecutor's failure to disclose impeachment evidence violate *Brady*. In *Giglio*, the government failed to disclose its plea agreement with the only witness linking defendant with the crime. 405 U.S. at 151, 92 S.Ct. at 764–65. Because that witness' credibility was "an important issue in the case, and any understanding or agreement as to a future prosecution ... [was] relevant to his credibility," failure to disclose such an agreement violated *Brady*. *Giglio*, 405 U.S. at 155, 92 S.Ct. at 764–65. See also *Davis* [*v. Alaska*], 415 U.S. [308], 317, 94 S.Ct. [1105], 1111 [39 L.Ed.2d 347] (credibility of prosecuting witness was a key element in state's case); *Talamante v. Romero*, 620 F.2d 784, 787 (10th Cir.) (where government's case rested entirely on eyewitness identification, failure to disclose police investigation of suspect resembling defendant violated *Brady*), *cert. denied*, 449 U.S. 877, 101 S.Ct. 223, 66 L.Ed.2d 99 (1980).

Conversely, where a witness' credibility is not material to the question of guilt, failure to disclose impeachment evidence does not violate *Brady*. In *United States v. Bonnett*, 877 F.2d 1450, 1459 (10th Cir.1989), we held that the government's failure to disclose that the author of a letter admitted into evidence was under indictment did not violate Brady where the content of the letter was "legally irrelevant" to defendant's guilt; hence the author's credibility was immaterial. In cases where the withheld impeachment evidence is merely cumulative, we have similarly declined to find a *Brady* violation. See *United States v. Page*, 808 F.2d 723, 730 (10th Cir.) (where jury already knew that government's principal witness had been arrested several times, failure to disclose additional arrest did not violate *Brady* ), *cert. denied*, 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 683 (1987); *United States v. Haskins*, 737 F.2d 844, 852 (10th Cir.

1984) (failure to disclose government assistance to witnesses in obtaining prison transfer was only cumulative impeachment). Moreover, where a prosecuting witness is not key to the government's case, his credibility is not material; hence the failure to reveal impeachment evidence concerning a minor witness does not violate *Brady.* See [*U.S. v.*] *Warhop,* 732 F.2d [775], 778–79 (credibility of co-conspirator immaterial to defendant's guilt where focal point of government's case is conspiracy between defendant and other charged parties). Thus, while impeachment evidence falls under the general *Brady* rule requiring disclosure of exculpatory evidence, it is subject to the same standard of materiality as other forms of exculpatory evidence.

Thus, evidence that tends to impeach a *key* government witness falls within the ambit of *Brady* if the witness' credibility is material to the question of guilt. Defendant's motion seeks information affecting the credibility of any and all witnesses. Because this court was not asked to determine whether impeachment evidence relating to any particular witness would be material under *Brady,* it cannot rule on defendant's motion at this time. However, the court notes that to the extent the government makes an independent determination that impeachment evidence with respect to any key witness is material under *Brady,* the government is ordered to disclose such information prior to trial and as expeditiously as possible.

### C. Nonexculpatory Impeachment Material Covered by Both Brady and The Jencks Act

To the extent that nonexculpatory impeachment material is covered by both *Brady* and the Jencks Act, 18 U.S.C. § 3500(a), pretrial disclosure has been held to be violative of the Jencks Act. In *United States v. Presser,* 844 F.2d 1275, 1283 (6th Cir.1988), for example, the Sixth Circuit held as follows:

> If impeachment evidence is within the ambit of the Jencks Act, then the express provisions of the Jencks Act control discovery of that kind of evidence. The clear and consistent rule of this circuit is that the intent of Congress expressed in the Act must be adhered to and, thus, the government may not be compelled to disclose Jencks Act material before trial. See *United States v. Algie,* 667 F.2d 569, 571 (6th Cir.1982); *United States v. Carter,* 621 F.2d 238, 240 (6th Cir.1980). Accordingly, neither *Giglio* nor *Bagley* alter the statutory mandate that any "statement"[8] in the government's possession related to the subject matter of a government witness's testimony shall not "be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a).

In the past, we have noted that the Act was designed to prevent defendants from engaging in "blind fishing expeditions" through the government's files, see, e.g., *United States v. Pope,* 574 F.2d 320, 324 (6th Cir.1978), but at the same time, to assure defendants of their Sixth Amendment right to confront their accusers by compelling the government to produce statements useful for impeachment of government witnesses. *United States v. Carter,* 613 F.2d 256 (10th Cir.1979). The Act accommodates both of these concerns by protecting the government's interests before trial and by protecting the defendant's rights at trial, since under the Act the impeachment material is disclosed in time to be used by the defense at trial. We have found only one federal appellate court which has discussed whether material arguably exempted from pre-trial disclosure by the Jencks Act yet also arguably exculpatory material under the *Brady* doctrine must be disclosed before trial. The Third Circuit stated in *United States v. Higgs,* 713 F.2d 39 (3rd Cir.1983), and also in *United States v. Starusko,* 729 F.2d 256 (3rd Cir.1984), that it believes the *Brady* doctrine is not violated if *Brady* material is disclosed in time for its "effective" use at trial. See *Starusko,* 729 F.2d at 262; *Higgs,* 713 F.2d at 44. We agree with this reasoning. Preserving the defendant's ability to defend himself effectively at trial is the underlying purpose of

the criminal discovery rules. Therefore, so long as the defendant is given impeachment material, even exculpatory impeachment material, in time for use at trial, we fail to see how the Constitution is violated.[9] Any prejudice the defendant may suffer as a result of disclosure of the impeachment evidence during trial can be eliminated by the trial court ordering a recess in the proceedings in order to allow the defendant time to examine the material and decide how to use it.

---

8  The Jencks Act defines "statement" as

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury. 18 U.S.C. § 3500(e).

9  In *Starusko*, however, the Third Circuit did indicate that in its view, there may be special circumstances when the *Brady* doctrine may require the disclosure of Jencks Act material before trial. In the Third Circuit's view, the situation could arise when the Jencks Act material truly is exculpatory of the charge against the defendant. *See Starusko*, 729 F.2d at 262–65. The court implied however, that the Brady doctrine may require pre-trial disclosure in such a situation because of the due process foundation of the doctrine, that is, that it is fundamentally unfair of the prosecution to withhold from the defendant until trial material which seemingly does prove innocence and therefore, which could obviate the need for a trial altogether. The Third Circuit noted that a prosecutor who withholds such material most likely violates professional ethical canons. However, the court did not state that it was establishing the rule that if exculpatory material is disclosed in time for use at trial, but that the material could have been disclosed earlier, a violation of constitutional law has occurred. Given the court's explicit holding that disclosure in time for effective use at trial is all that the *Brady* doctrine requires, we do not read the *Starusko* decision as undermining the conclusion we have reached in this case.

■ Thus, under *Presser*, the government cannot be compelled to make pretrial disclosure of nonexculpatory impeachment material that is covered by both *Brady* and the Jencks Act. Such material need not be disclosed "until the witness has testified on

direct examination in the trial of the case." 18 U.S.C. § 3500(a). If prejudice might otherwise result from such delayed disclosure, the trial court can obviate the prejudice by "ordering a recess in the proceedings in order to allow the defendant time to examine the material and decide how to use it." *Presser*, at 1284. Accordingly, to the extent the defendant seeks pretrial disclosure of nonexculpatory impeachment material that is covered by both *Brady* and the Jencks Act, his motion will be denied. The government will not be required to disclose such material "until the witness has testified on direct examination." 18 U.S.C. § 3500(a).

### D. Directly Exculpatory Material Covered by Both Brady and the Jencks Act

■ The law with respect to disclosure of *Brady* material that is directly exculpatory and also covered by the Jencks Act is less than clear. This court reads the decision in *Presser* as standing for the proposition that *any Brady* material, even if directly exculpatory, that is also covered by the Jencks Act need not be disclosed until after the witness whose statements are sought has testified on direct examination. In any event, the rationale behind the *Presser* opinion applies with equal force to both directly exculpatory statements and impeachment statements covered by the Jencks Act.

The holding in *Presser* with respect to the potential conflict between the Jencks Act and *Brady* material is that "[i]f *impeachment* evidence is within the ambit of the Jencks Act, then the express provisions of the Jencks Act control discovery of that kind of evidence." *Presser*, 844 F.2d at 1283 (emphasis supplied). However, the court goes on to say as follows:

[S]o long as the defendant is given impeachment material, *even exculpatory impeachment material*, in time for use at trial, we fail to see how the Constitution is violated. Any prejudice the defendant may suffer as a result of disclosure of the impeachment evidence during trial can be eliminated by the trial court or-

dering a recess in the proceedings in order to allow the defendant time to examine the material and decide how to use it." *Id.* at 1283–84 (footnote omitted) (emphasis supplied).

The reference to "exculpatory impeachment material" clearly refers to material that is directly exculpatory. Obviously, the categories of impeachment evidence and exculpatory evidence are not mutually exclusive. If a person makes a statement that is directly exculpatory, the Jencks Act is only implicated if the government decides to call that person as a witness. It follows that in such a circumstance, the person's exculpatory statement will always have impeachment value, i.e. why would the person testify against the defendant after making a directly exculpatory statement? In most cases, the impeachment use of the directly exculpatory statement will be as a prior inconsistent statement. Further, all impeachment material covered by *Brady* is exculpatory in a general sense. Thus, the court's reference in *Presser* to "exculpatory impeachment material" would be tautological unless it referred to directly exculpatory statements.

The rationale of *Presser* is that there need not be a conflict between *Brady* and the Jencks Act. Because *Brady* requires that material be disclosed only in time for its effective use at trial, the *Presser* court noted that "[a]ny prejudice the defendant may suffer as a result of [not receiving material covered by both *Brady* and the Jencks Act until after the witness has testified on direct examination] can be eliminated by the trial court ordering a recess in the proceedings in order to allow the defendant time to examine the material and decide how to use it." *Presser,* 844 F.2d at 1283–84. Obviously, any prejudice that might result from not disclosing *Brady* material that is also covered by the Jencks Act until after the witness has testified on direct examination would be effectively eliminated by a recess, regardless of whether the statements were directly exculpatory or merely impeachment material.

Finally, if the *Presser* court did not intend for its holding to extend to all *Brady* material, there would have been no reason

to disapprove of an inference the *Presser* court drew from the court's opinion in *Starusko:*

> In *Starusko,* however, the Third Circuit did indicate that in its view, there may be special circumstances when the *Brady* doctrine may require the disclosure of Jencks Act material before trial. In the Third Circuit's view, the situation could arise when the Jencks Act material truly is exculpatory of the charge against the defendant. *See Starusko,* 729 F.2d 262–65. The court implied however, the *Brady* doctrine may require pretrial disclosure in such a situation because of the due process foundation of the doctrine, that is, that it is fundamentally unfair of the prosecution to withhold from the defendant until trial material which seemingly does prove innocence and therefore, which could obviate the need for a trial altogether.
>
> \* \* \* \* \* \*
>
> [However], [g]iven the court's explicit holding that disclosure in time for effective use at trial is all that the *Brady* doctrine requires, we do not read the *Starusko* decision as undermining the conclusion we have reached in this case.

*Presser,* 844 F.2d at 1283 n. 9. If the *Presser* court had intended its holding to apply only to impeachment material, the inference the court drew from the *Starusko* opinion would have been irrelevant to that holding. It is only because the *Presser* court intended that its holding apply to all *Brady* material that the court found it necessary to deal with the possibility that the *Starusko* opinion implied that "there may be special circumstances when the *Brady* doctrine may require the disclosure of Jencks Act material before trial." *Id.*

Through its own research, the court has only uncovered one other recent case, besides *Presser* and *Starusko,* that deals with the issue of the potential conflict between *Brady* and the Jencks Act. In *United States v. Gallo,* 654 F.Supp. 463, 474 (E.D.N.Y.1987) the court stated that a strict interpretation of the Jencks Act

would lead to the conclusion that pretrial discovery is never permissible for any material contained in the statements of prospective witnesses, even if there are alternative bases for such discovery. But that interpretation has never been accepted. For instance, compliance with the Jencks Act discovery schedule does not necessarily satisfy the due process requirements for *Brady* material. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). If witness' statements contain material exculpatory to the defendant, due process *requires* pretrial production under *Brady* despite the fact that it may be *Jencks* material as well. *See United States v. Starusko*, 729 F.2d 256, 263 (3rd Cir.1984); *United States v. Layton*, 564 F.Supp. 1391, 1396 (D.Oregon 1983); *United States v. Thevis*, 84 F.R.D. 47, 54 (N.D.Ga.1979).

(emphasis supplied). First, although it is true that "compliance with the Jencks Act discovery schedule does not necessarily satisfy the due process requirements for *Brady* material" *Id.*, as the *Presser* court pointed out, that potential conflict between the Jencks Act and *Brady* can be "eliminated by the trial court ordering a recess in the proceedings in order to allow the defendant time to examine the material and decide how to use it." *Presser*, 844 F.2d at 1283–84. Second, that due process generally *requires* pretrial disclosure of *Brady* material is a shaky proposition at best.

According to the only court of appeals case relied on by the court in *Gallo* for this proposition, " '[n]o denial of due process occurs if *Brady* material is disclosed in time for its effective use at trial.' " (Citation omitted). *Starusko*, 729 F.2d at 262. Obviously, the effective use at trial standard does not necessarily *require* pretrial disclosure. Significantly, the court in *Presser* relied on this very language from *Starusko* in support of its holding that material covered by both *Brady* and the Jencks Act needs not be disclosed until after the witness has testified on direct examination.

The other authority relied on by the court in *Gallo* does arguably support the proposition that material covered by both *Brady* and the Jencks Act *must* be disclosed prior to trial. In *United States v. Thevis*, 84 F.R.D. 47, 54 (N.D.Ga.1979), the court held "that the better rule requires the pretrial disclosure of *Brady* material in accordance with the timetable set forth in this order even though that material is part of a Jencks Act statement." *Thevis*, however, has never been cited by a court of appeals, not even in its own circuit. In *United States v. Layton*, 564 F.Supp. 1391, 1396 (D.Oregon 1983), the court held that if notes covered by the Jencks Act "constituted evidence favorable to the accused, however, the government would be obligated to produce them before trial." As with *Thevis*, *Layton* has never been cited by a court of appeals. Moreover, the only case ever to cite *Layton* was the *Gallo* opinion itself. Thus, even if the law in this circuit were not clear, the court would be unpersuaded by the proposition espoused by *Gallo* that the government is required to produce material that is covered by both the Jencks Act and *Brady* before commencement of trial or even that the government *might* be required under *Brady* to disclose material also covered by the Jencks Act prior to the witness being subjected to direct examination.

## ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that insofar as the information requested is *Brady* material, not impeachment information and not covered by the Jencks Act, 18 U.S.C. § 3500, the same shall be provided as expeditiously as possible and in advance of trial.

FURTHER, IT IS ORDERED that insofar as the information requested is impeachment information covered under *Brady* and not otherwise covered by the Jencks Act, 18 U.S.C. § 3500, the government shall disclose the same as expeditiously as possible and in advance of trial.

FURTHER, IT IS ORDERED that insofar as the information requested is covered under both *Brady* and the Jencks Act, 18 U.S.C. § 3500, the government need not disclose the same until the witness has been subjected to direct examination.

FURTHER, the government having stated that it did not oppose defendant's motion in this regard, IT IS ORDERED that the government shall comply with the provisions of Fed.R.Crim.P. 16, and shall comply with the requirements and provisions of this court's prior order of February 21, 1991 as contained in the corrected trial notice issued on said date.